GEORGE HARLEY, Respondent, *against* THE ELEVENTH WARD BANK, Appellant.

(Decided February 4th, 1878.)

Where the plaintiff deposited with the defendant for collection a sight draft which the defendant sent to its agent, a corresponding bank, for collection, and such correspondent, before the draft had been collected, but supposing that it had been, credited the amount thereof to the defendant, who thereupon gave credit therefor to the plaintiff, and the correspondent bank afterwards having discovered its mistake charged back the amount of the draft to the defendant, and the plaintiff, being notified of these facts, refused to take back the draft or have the amount of it charged to his account, and the defendant thereupon accused its correspondent with delay in not returning the draft, and stated that it would be compelled to look to it for payment of it, and afterwards rendered the plaintiff an account without charging the draft back to him, and continued for two years to render him accounts in the same way,—*Held*, that there was an account stated in respect to the draft, which precluded the defendant from denying its liability to the plaintiff therefor.

APPEAL by the defendant from a judgment of this court, entered upon the report of a referee appointed to hear and determine the issues.

The action was brought by the plaintiff, who had been a dealer and depositor with the defendant, to recover from it $885 alleged to be due as the balance unpaid of an account stated between the plaintiff and defendant of $3,168 95, made on May 8, 1875.

The defendant answered that in the account stated the sum of $800 had been erroneously, and by a mutual mistake of the parties, credited to the plaintiff.

The facts upon which the defendant sought to have this sum of $800 deducted from the balance shown by the account in favor of the plaintiff are stated in the opinion.

*F. N. Bangs*, for appellant.

*Edward Patterson*, for respondent.

LARREMORE, J.—It appears from the testimony that plaintiff was a dealer and depositor of moneys with the defendant. That on November 12, 1872, he deposited with the bank for collection a sight draft for $800, drawn by him on one J. W. Martin, of Andover, Connecticut, who was indebted to plaintiff in excess of that amount. The defendant forwarded the draft to its correspondent and agent, the Yale National Bank at New Haven, Connecticut, which forwarded it to the Rockville National Bank in said State, which gave it to the Adams Express Company for collection. An agent of that company saw Martin as he was about entering the cars at Andover and told him he had the draft, whereupon Martin requested the agent to hold the draft until his return within a day or two, and he would pay it. The Yale National Bank in sending its semi-monthly statement to defendant up to November 15, 1872, credited the amount of the draft, supposing it had been paid. The defendant thereafter, on November 18, 1872, believing the draft to have been paid, credited the amount to plaintiff's account. The draft was not paid, and was returned to defendant by the Yale National Bank, December 3, 1872, with notice of its non-payment. It was returned by defendant's cashier to the

Yale National Bank, December 4, 1872, with a letter containing the following statement : " You credited us with the amount of the draft as per your statement of accounts November 15, and we paid the money to the party here, who declines to make it good in consequence of the length of time after the payment to him. There has been a great delay somewhere which I would be pleased to have explained. Send the draft on at once and urge its payment."

About December 17, 1872, the Yale National Bank returned the draft with a letter of explanations of the delay, and also sent its semi-monthly account to defendant up to December 15, 1872, wherein it appeared that the amount of the draft had been charged back. The plaintiff was notified of these facts, but refused to take up the draft or to be charged with the amount thereof. The defendant then wrote the Yale National Bank, December 18, 1872, disputing the amount charged on account of the draft, and stated : " The draft was presented and not paid, and should have been returned at once ; we will be compelled, under the circumstances, to look to you for the payment of it."

With full knowledge of all the facts, defendant, on December 27, 1872, accounted with plaintiff, showing a balance due him of $6,715 65, in which sum the amount of said draft was continued and allowed. And in each subsequent accounting between the parties up to and including May 8, 1875, the plaintiff was allowed the credit of the draft, and the question now raised is, whether the defendant is not estopped from impeaching the correctness of an account after so long an acquiescence in its validity.

If there was any doubt as to plaintiff's liability, it was settled in his favor by the defendant. With full knowledge of all the facts, defendant accepted and acted upon plaintiff's theory of the case, and sought to charge its own agent with the loss. In its letter of December 18, 1872, to the Yale National Bank, such intention is plainly expressed. No fraud or mistake is shown by which the defendant was misled or deceived. (*Lockwood* v. *Thorne,* 11 N. Y. 175 ; 18 N. Y. 285.)

It appeared that the account of December 27, 1872, was not only stated, but settled; and it was also ratified and re-affirmed by each subsequent accounting through a period of over two years. Plaintiff resisted the claim at the outset on the ground of defendant's want of diligence in its collection. The defendant recognized this in the correspondence with its agent, refused to accept Martin's offer to pay fifty per cent. of the indebtedness, and rendered account after account in which it was entirely ignored.

I think the defendant should be held to its own interpretation of the transaction, and that the judgment should be affirmed.

ROBINSON, J.—Payments voluntarily made by one against whom a claim is made as of right, and by whom it is assented to, cannot be reclaimed. The credit given by the defendant to plaintiff of the $800 draft in question they might have cancelled upon being advised of their mistake, had the failure to collect the draft arisen through no default of theirs. But after having been fully apprised of its non-payment, of plaintiff's refusal to any discharge of the credit because of want of diligence on their part, or of their sub-agents, in its collection, and of Martin's failure while presentation was delayed, and having thereafter asserted against their sub-agent, *in their own right*, a claim for damages for their neglect, predicated upon their positive assertion that they had, in consequence of that neglect, paid their own employer (the plaintiff), and as his conceded damages for their neglect, the amount of the draft: and further, after having continued the credit uncancelled for two years and a half, and having during that time made no attempt to modify or correct it, but in their numerous accounts rendered making no intimation of any dissent from its correctness, I fail to discover how such subsequent accounts, prepared and rendered under full knowledge of the facts, could be regarded as other than " accounts stated " without legal impeachment for the alleged mistake occurring in November, 1872, in respect to the Martin draft.

Payments are transactions wherein both debtor and cred-

itor agree in the application of the money paid or considera-
tion given as being to the very intent and purpose suggested
and agreed upon between them. No mistake occurred in
this case in the continued assertion of the plaintiff's claim,
that the credit given him in his bank account for the draft
should be maintained, nor in the acquiescence by the de-
fendants in that claim in the subsequent transactions be-
tween the parties, and the repeated acquiescence in, and ac-
knowledgment of, its justice and propriety until May, 1875.
Other considerations of an equitable character also *estop*
the defendants. They were offered by Martin fifty per cent.
of the debt, which they refused, and they then (as they never
had done before) neglected to advise the plaintiff they
should look to him *alone* for the amount of the draft. The
credit so asserted in November, 1872, and acquiesced in by
the defendants, and continued unaltered without further
question until in May, 1875, must in every aspect be treated as
then made, and be held as a legal payment into the bank,
through deposits made for all purposes of a general bank ac-
count, and as recognized in all the subsequent accounts be-
tween the parties, as evidenced by plaintiff's pass books
and the balancing or settlements of balances therein on
various occasions, as shown by the testimony. The subse-
quent attempt of the defendants in May, 1875, to return the
draft and disavow and annul the credit made and acquiesced
in from November, 1872, was of no avail.

I concur with Judge Larremore in an affirmance of the
judgment.

CHARLES P. DALY, Ch. J., dissented.

Judgment affirmed.*

---

* Affirmed by the Court of Appeals, March 18th. 1879.